1  Rick A. Cigel, Esq. (SBN 105424)
   THE CIGEL LAW GROUP, P.C.
2  10866 Wilshire Blvd., Suite 400
   Los Angeles, California 90024
3  Tel: (424) 901-8513
4  Fax: (424) 901-8514
5  Attorneys for Defendant
6  DOE 1



7
8                UNITED STATES DISTRICT COURT
9         FOR THE CENTRAL DISTRICT OF CALIFORNIA

                        CV13-07003- JFW
10                                          (MANx)
   HARMEET K. DHILLON, an     NOTICE OF MOTION AND MOTION
11 individual,                BY DEFENDANT DOE 1 TO QUASH
                              SUBPOENA ISSUED IN CENTRAL
12           Plaintiff,       DISTRICT OF CALIFORNIA TO NEW
                              DREAM NETWORK, LLC
13       vs.
                              [Concurrently filed with Declaration of
14 DOE 1, an unknown individual, and   Rick A. Cigel]
   DOES 2 through 10,
15                            (Action pending in the Northern District of
16           Defendants.      California: Case No.13-cv-01465-JCS)
                              Date : 10-21-2013
17                            Time : 1:30 pm
                              Place : Courtroom 16
18 TO ALL PARTIES HEREIN AND TO THEIR ATTORNEYS OF RECORD:

19       **PLEASE TAKE NOTICE** that Defendant DOE 1, an anonymous and

20 unserved party, hereby moves pursuant to F.R.C.P. 45(c) to quash a subpoena served

21 on non-party New Dream Network, LLC. The subpoena was issued in the Central

22 District of California on July 22, 2013 regarding an action that is pending in the

23 Northern District of California. Doe 1 files this motion under the fictitious name

24 because his or her anonymity is critical to the political blog that is the subject of this

25 lawsuit.

26       This Motion is based upon this Notice of Motion and Motion to Quash, the

27 accompanying Memorandum of Points and Authorities, the Declaration of Rick A.

28

Cigel, the Proposed Order, all pleadings and papers on file in this action, and upon

such other matters as may be presented to the Court at the time of the hearing.

Dated:  September 20, 2013          **THE CIGEL LAW GROUP, P.C.**



By: _____

Rick A. Cigel
Attorneys For Defendant
DOE 1

1

# TABLE OF CONTENTS

2

3

I.     INTRODUCTION AND FACTUAL BACKGROUND ......................................... 1

II. MEET AND CONFER REQUIREMENTS HAVE BEEN MET ........................... 4

III. DOE 1 HAS STANDING TO BRING THIS MOTION ......................................... 5

IV. THIS COURT SHOULD QUASH A SUBPOENA THAT REQUIRES
        DISCLOSURE OF PROTECTED INFORMATION .............................................. 5

V. THE SPEECH AND IDENTITY OF DOE 1 ARE PROTECTED BY THE
        FIRST AMENDMENT ............................................................................................. 6

VI. DOE 1'S FIRST AMENDMENT RIGHTS OUTWEIGH DHILLON'S
        PURPORTED NEED FOR DISCLOSURE ............................................................. 8

VII. DHILLON FAILED TO MAKE A SUFFICIENT SHOWING OF
        INFRINGEMENT IN LIGHT OF THE "FAIR USE" DOCTRINE ................... 16

        A. PURPOSE AND CHARACTER OF THE USE. ............................................... 17

        B. NATURE OF THE COPYRIGHTED WORK.................................................. 20

        C. AMOUNT AND SUBSTANTIALITY OF PORTION USED ....................... 21

        D. EFFECT OF THE USE UPON THE POTENTIAL MARKET FOR OR
                VALUE OF THE COPYRIGHTED WORK ..................................................... 21

VIII. DOE 1 WOULD SUFFER GREAT HARM IF HIS IDENTITY WERE
        DISCLOSED ........................................................................................................... 22

IX. CONCLUSION ...................................................................................................... 24

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

Cases

3  Arista Records, LLC v. Doe 3, 604 F.3d 110 (2d Cir. 2010) .............................8, 12, 13

4  Art of Living Found. v. Does 1-10, 2011 WL 5444622 (N.D. Cal. 2011).......... passim

5  Ascend Healthcare Corp. v. Wells, 2013 WL 1010589 (E.D.N.C. 2013)....................19

6  Baraban v. Time Warner Inc., 54 USPQ2d 1759 (S.D.N.Y. 2000)..............................19

7  Broadcort Capital Corp. v. Flagler Sec., 149 F.R.D. 626 (D. Colo. 1993)....................5

8  Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569 (1994). ........................................17

9  Chaplinsky v. State of New Hampshire, 315 U.S. 568 (1942). ....................................12

10  Doe v. 2TheMart.com Inc., 140 F. Supp. 2d 1088 (W.D. Wash. 2001)....................6, 7

11  Doe v. Cahill, 884 A.2d 451 (Del.2005).............................................................9, 12, 23

12  Dr. Seuss Enters., L.P v. Penguin Books USA, Inc., 109 F. 3d 1394

13  (9th Cir. 1997)..........................................................................................................17

14  Eldred v. Ashcroft, 537 U.S. 186 (2003) ......................................................................16

15  Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340 (1991)...........16

16  Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539 (1985) .....................20

17  Highfields Capital Management, L.P v. Doe, 385 F. Supp. 2d 969

18  (N.D. Cal. 2005)............................................................................... ..5, 8, 13, 15, 22

19  Hustler Magazine, Inc. v. Moral Majority, Inc., 606 F.Supp. 1526

20  (C.D. Cal. 1985)........................................................................................................18

21  In re Anonymous Online Speakers, 661 F.3d 1168 (9th Cir. 2011) ...............7, 9, 10, 11

22  UMG Recordings, Inc. v. Augusto, 628 F.3d 1175 (9th Cir.2011) ..............................16

23  Keep Thomson Governor Committee v. Citizens for Gallen Committee,

24  457 F.Supp. 957 (D.N.H. 1978)...............................................................................18

25  Kelly v. Arriba Soft Corp., 336 F. 3d 811 (9th Cir. 2003) ........................ 17, 18, 20, 21

26

27

28

1  Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League,

2      89 F.R.D. 489 (C.D. Cal.1981)........................................................................9

3  McIntyre v. Ohio Elections Comm'n, 514 U.S. 334 (1995)...................................6, 7, 8

4  Meyer v. Grant, 486 U.S. 414 (1988) .............................................................7

5  NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 461 (1958)................................9

6  New Era Publications Intern., ApS v. Carol Pub. Group, 904 F.2d 152

7      (2d Cir.1990).......................................................................................19

8  Northland Family Planning Clinic, Inc. v. Center for Bio-Ethical Reform,

9      868 F.Supp.2d 962 (C.D. Cal. 2012). .........................................................18

10  Perry v. Schwarzenegger,  591 F.3d 1147 (9th Cir. 2010) ....................................7

11  Reno v. ACLU, 521 U.S. 844 (1997)...............................................................7

12  Rosemont Enterprises, Inc. v. Random House, Inc., 366 F.2d 303

13      (2d Cir. 1966).......................................................................................23

14  SaleHoo Grp., Ltd. v. ABC Co., 722 F. Supp. 2d 1210

15      (W.D. Wash. 2010)...........................................................................9, 13, 22

16  Sedgwick Claims Mgmt. Servs., Inc. v. Delsman, 2009 WL 2157573

17      (N.D. Cal. 2009)....................................................................................19

18  SI03, Inc. v. Bodybuilding.com, LLC, 441 F. App'x 431 (9th Cir. 2011)...................11

19  Snedigar v. Hoddersen, 114 Wash.2d 153 (1990) .............................................9

20  Sony Music Entertainment Inc. v. Does 1 – 40, 326 F. Supp. 2d 556

21      (S.D.N.Y. 2004)....................................................................................13

22  Talley v. California, 362 U.S. 60 (1960)...........................................................6

23  Zito v. Steeplechase Films, Inc. 267 F. Supp. 2d 1022 (N.D. Cal. 2003) ..................16

24

25  Statutes

26  17 U.S.C. § 107 ...................................................................................17

27  17 U.S.C. § 412 ...................................................................................23

28  17 U.S.C. § 501(a)................................................................................16

F.R.C.P.  45(c) .................................................................................................5

F.R.C.P. 45(c)(3)(A)(iii) ..................................................................................5

Fed. R. Civ. P. 45(c)(3)(A) .............................................................................8

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I. INTRODUCTION AND FACTUAL BACKGROUND

3 Although this lawsuit is held out as an ordinary copyright infringement case, its
4 existence and narrow agenda are quite sinister. The suit has a single purpose: to
5 harass and bully anonymous political commentators who write critical articles on an
6 internet blog. Plaintiff Harmeet Dhillon ("Dhillon"), a San Francisco litigation
7 attorney, filed the suit so that she can serve subpoenas forcing these anonymous
8 bloggers to reveal their identities. The authors would then be subjected to financial
9 and political retaliation for their articles. Dhillon's actions are the quintessential
10 conduct that is banned by California's anti-SLAPP law.

11 These political bloggers are writing revealing articles about one of the richest
12 activists in California politics, Charles Munger, Jr.[1] Munger is the chairman of the
13 Santa Clara County Republican Party. Since January 1, 2012, Munger reportedly
14 donated more than $42,000,000 on his political projects.

15 Many people believe that Munger has used his enormous family fortune to do
16 great damage to California and to its politics. A political blog was created in January
17 2013 to educate readers about Munger's activities. The blog is called "The Munger
18 Games"[2] and is located on the internet at www.mungergames.net. The blog is a pure
19 exercise of First Amendment rights to write anonymously regarding Munger's
20 political tactics and the harm they are causing to California. Munger does not like

21

22

---

23 [1] Munger is the son of Charles Munger, the billionaire Vice-Chairman of Warren
24 Buffet's company, Berkshire Hathaway Corporation. A true and correct copy of the
inaugural article written about Munger is attached to the concurrently-filed
25 Declaration of Rick A. Cigel ("Cigel Dec.") as Exhibits "A" and "B".

26

27 [2] This motion offers no information about the number or gender of bloggers or other
individuals involved in The Munger Games. The use of plural references and male
28 pronouns in this brief has no significance.

1  the articles and wants them stopped.  However, he cannot punish the authors until he
2  learns their identities.

3      In order to learn the bloggers' identity, this lawsuit was filed by his attorney,
4  Dhillon.  Dhillon is the current Vice Chairperson of the California Republican Party
5  and a long time unsuccessful candidate for public office.[3]

6      Mungergames.net ran an article about Dhillon on February 12, 2013 and posted
7  a publicity headshot photograph of her that was found on the internet from a previous
8  political campaign.  Cigel Decl, Exhibit "D".  Dhillon and Munger formed the
9  strategy that she would sue the website in order to learn the identities of its bloggers.
10  However, Dhillon knew she had not registered a copyright on the photograph.  In
11  order to heighten the indignation in her pleadings, she delayed her filing for a short
12  time while she rushed out to register the copyright.  She then filed her copyright
13  lawsuit on April 2, 2013 in the United States District Court for the Northern District
14  of California.  The suit was filed by Dhillon's own San Francisco law firm, Dhillon &
15  Smith LLP.  Cigel Decl, Exhibit "E".

16      **Despite all of Dhillon's indignation in her pleadings, she knows that she**
17  **has a de minims damage claim.  Dhillon spent all the time and money to sue in**
18  **federal court for actual damages of only $250.00.**

19      Once the suit was filed, Dhillon and Munger quickly and aggressively revealed
20  the real reason for filing this lawsuit, which is to force the bloggers to reveal their
21  identity:

22          1) Dhillon served a subpoena on New Dream Network, LLC, the
23      Southern California company that hosts the website for Mungergames.net.  The

24

25  [3] In 2012, Munger was Dhillon's single largest political contributor, donating $7,500
26  to her failed election for a state senate seat.  Attached hereto as Exhibit "C" is a true
27  and correct copy of a report from the website www.votesmart.org.  It shows Charles
    Thomas Munger, Jr. as the top contributor to Dhillon's 2012 campaign finances at
28  $7,500.00.

subpoena was issued on April 11, 2013 and commands the production of all information identifying the Doe defendants. Cigel Decl., Exhibit "F";

2) Dhillon filed an unsuccessful administrative motion to compel compliance with that subpoena. The Court denied the motion because it had no jurisdiction under F.R.C.P. 45 to enforce a subpoena against a Southern California company. Cigel Decl., Exhibit "G";

3) On July 22, 2013, Dhillon had the instant subpoena issued out of the Central District of California against New Dream Network, LLC. This is the subpoena that is the subject of this motion. Cigel Decl., Exhibit "H";

4) On August 26, 2013, in her Northern District of California lawsuit, Dhillon filed an Administrative Motion For Leave To Take Limited Discovery On Google, Inc. Prior To A Rule 26(f) Conference. In that motion, she stated the urgent need to have the Court issue subpoenas against Google, Inc. and Michael John Schroeder, a former chairman of the California Republican Party. The subpoenas address not only the identity of the individuals at Mungergames.net, but also all account information for two email addresses she believes are associated with Mungergames.net. The proposed subpoena commands production of "the name, address and phone number of the owner(s) of these email addresses, and the IP address(es) from which the user(s) created the accounts and signed in and signed out, with dates and times." Cigel Decl., Exhibit "I"

5) Dhillon not only wants the identity of the persons associated with the IP addresses, she wants to force Mr. Schroeder to produce "any communication between Schroeder and any such individual concerning the "Meet Harmeet" post, from February 12, 2013 to present." Under the guise of innocently needing to learn the identity of Doe defendants, Dhillon now wants to conduct sweeping discovery regarding nine months of communications. Cigel Decl., Exhibit "J".

1    Dhillon plainly is using this lawsuit as an artifice to conduct that discovery, and
2    will deliver any such information to Munger for his use. Munger has already
3    demonstrated that he uses his enormous wealth to crush political commentators and
4    adversaries, as he is pursing nearly $250,000 in attorney's fees against a political
5    critic who has an annual salary of $6,000.

6    Dhillon's tactics are not proper and the subpoena should be quashed. Doe 1
7    has done nothing more than exercise his[4] First Amendment right to free speech.
8    Courts in the past several years have consistently held that internet speech is entitled
9    to the same protection as any other kind of speech. Political speech receives the
10   highest level of First Amendment protection regardless of the forum. Courts have
11   also recognized that a person has First Amendment rights to remain anonymous in
12   critical speech.

13   Due to these stringent constitutional protections, courts have required that
14   anyone seeking to compel disclosure of an anonymous political speaker's identity
15   must make a strong evidentiary showing of each and every element of a cause of
16   action before disclosure will be ordered. Most recently, the Ninth Circuit has adopted
17   the "summary judgment" standard of proof in the context of political speech.

18   As is discussed below, Dhillon cannot meet this standard of proof in her
19   copyright action, because Mungergames.net's use of her headshot photograph is "Fair
20   Use". Thus, Doe 1 respectfully requests that this Court quash this subpoena.

21   II. MEET AND CONFER REQUIREMENTS HAVE BEEN MET

22   This motion is made following the conference of counsel pursuant to Local
23   Rule 7-3 which took place on July 18 and 19, 2013. Counsel for New Dream
24   Network sent a letter to Dhillon's counsel stating that a motion to quash this subpoena
25   would be filed. Dhillon's counsel replied by letter that New Dream Network "has

26

27   [4] To further protect Doe 1's anonymity, the pronoun "he" will be used without regard
28   for whether Doe 1 is male or female.

1  been properly served with a Court-approved subpoena and we expect and will insist
2  on compliance." (Cigel Decl., Exhs. "K" and "L").

3  III. DOE 1 HAS STANDING TO BRING THIS MOTION

4  F.R.C.P. 45(c) requires this Court to "protect *all persons* from undue burden
5  imposed by the use of the subpoena power." Id., Advisory Committee Notes to 1991
6  Amendments (emphasis added); Broadcort Capital Corp. v. Flagler Sec., 149 F.R.D.
7  626, 628 (D. Colo. 1993). A third party whose privacy interests are affected by the
8  subpoena thus has standing to assert the privilege by motion to quash. Id.

9  The First Amendment confers just such a privacy interest – a constitutional
10  right to speak anonymously. Therefore, an anonymous speaker who claims that
11  disclosure of his identity would violate his First Amendment right to anonymity has
12  standing to move to quash that discovery. Highfields Capital Management, L.P. v.
13  Doe, 385 F. Supp. 2d 969, 971 (N.D. Cal. 2005) (granting anonymous speaker's
14  motion to quash subpoena to ISP).

15  IV. THIS COURT SHOULD QUASH A SUBPOENA THAT REQUIRES
16  DISCLOSURE OF PROTECTED INFORMATION

17  F.R.C.P. 45(c)(3)(A)(iii) states that, on timely motion, the issuing court *must*
18  quash or modify a subpoena that . . . requires disclosure of privileged or other
19  protected matter, if no exception or waiver applies." Doe 1 has brought this motion
20  within the time frame set forth in the Amended Order Granting Plaintiff's *Ex Parte*
21  Application, which required New Dream Network to serve the subpoena on
22  mungergames.net within 30 days, and allowed an additional 30 days for the filing of
23  any motion contesting the subpoena. (Cigel Decl., Exhibit "H", attached to
24  subpoena).

25  The subpoena is dated July 22, 2013. Although it is not clear when Dhillon
26  served New Dream Network, this motion is timely filed within 60 days of the
27  subpoena date.

28  In addition, this motion to quash raises important privacy considerations

1 │ implicated by the First Amendment's protection of free speech, including the identity
2 │ of an anonymous speaker. Thus, this motion falls within the mandatory provisions of
3 │ the motion to quash statute.

4 │ V. <u>THE SPEECH AND IDENTITY OF DOE 1 ARE PROTECTED BY THE</u>
5 │ <u>FIRST AMENDMENT</u>

6 │ It is well established that the First Amendment protects the right to anonymous
7 │ speech. <u>McIntyre v. Ohio Elections Comm'n</u>, 514 U.S. 334, 342 (1995) ("An author's
8 │ decision to remain anonymous, like other decisions concerning omissions or additions
9 │ to the content of a publication, is an aspect of the freedom of speech protected by the
10 │ First Amendment."). The U.S. Supreme Court stressed that "Anonymous pamphlets,
11 │ leaflets, brochures and even books have played an important role in the progress of
12 │ mankind. Persecuted groups and sects from time to time throughout history have been
13 │ able to criticize oppressive practices and laws either anonymously or not at all."
14 │ <u>Talley v. California</u>, 362 U.S. 60, 64 (1960). "Anonymous speech is a great tradition
15 │ that is woven into the fabric of this nation's history." <u>Doe v. 2TheMart.com Inc.</u>, 140
16 │ F. Supp. 2d 1088, 1092 (W.D. Wash. 2001) (referring to the Federalist Papers).

17 │ In the context of political speech, the Supreme Court has recognized that First
18 │ Amendment protection is especially critical. "Under our Constitution, anonymous
19 │ pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of
20 │ advocacy and of dissent. Anonymity is a shield from the tyranny of the majority. It
21 │ thus exemplifies the purpose behind the Bill of Rights, and of the First Amendment in
22 │ particular: to protect unpopular individuals from retaliation—and their ideas from
23 │ suppression—at the hand of an intolerant society." <u>McIntyre v. Ohio Elections</u>
24 │ <u>Comm'n</u>, 514 U.S. 334, 357 (1995) (citations omitted).

25 │ "When speech touches on matters of public political life, <u>such as debate over</u>
26 │ <u>the qualifications of candidates, discussion of governmental or political affairs,</u>
27 │ <u>discussion of political campaigns, and advocacy of controversial points of view, such</u>
28 │ <u>speech has been described as the "core" or "essence" of the First Amendment."</u> <u>Doe</u>

1  v. 2TheMart.com Inc., supra, 140 F. Supp. at 1092-93 (emphasis added), citing,
2  McIntyre, supra, 514 U.S. at 346–47.

3       The Ninth Circuit agrees that it is crucial to protect political speech. "Given
4  the importance of political speech in the history of this country, it is not surprising
5  that courts afford political speech the highest level of protection." In re Anonymous
6  Online Speakers, 661 F.3d 1168, 1173 (9th Cir. 2011), citing, Meyer v. Grant, 486
7  U.S. 414, 422, 425 (1988). The Court stressed that the First Amendment protection
8  of "core political speech" is "at its zenith".

9       This fundamental right enjoys the same protections whether the context for
10  speech is a political leaflet or an Internet blog. Reno v. ACLU, 521 U.S. 844, 870
11  (1997) (there is "no basis for qualifying the level of First Amendment scrutiny that
12  should be applied to" the Internet).

13       The First Amendment protects not only the content of the political speech, but
14  the identity of the speaker. "As with other forms of expression, the ability to speak
15  anonymously on the Internet promotes the robust exchange of ideas and allows
16  individuals to express themselves freely without 'fear of economic or official
17  retaliation ... [or] concern about social ostracism.' " Anonymous Online Speakers,
18  supra, 661 F.3d. at 1173 (citing McIntyre, supra, 514 U.S. at 341–42).

19       As stated in Art of Living Foundation v. Does 1 – 10, 2011 WL 5444622
20  (N.D. Cal. 2011):

21       First, to the extent that [the speaker's] anonymity facilitates free speech,
22       the disclosure of his identity is itself an irreparable harm. See, Perry v.
23       Schwarzenegger, 591 F.3d 1147, 1158 (9th Cir. 2010)("One injury to
24       Proponents' First Amendment rights is the disclosure itself. Regardless
25       of whether they prevail at trial, this injury will not be remediable on
26       appeal."). As the Supreme Court has explained, "an advocate may
27       believe her ideas will be more persuasive if her readers are unaware of
28       her identity. Anonymity thereby provides a way for a writer who may be

1    personally unpopular to ensure that readers will not prejudge her
2    message simply because they do not like its proponent." <u>McIntyre</u>, <u>supra</u>,
3    514 U.S. at 342. The <u>Highfields</u> court put it more succinctly:
4    "Anonymity liberates." <u>Highfields Capital Management, L.P v. Doe</u>, 385
5    F. Supp. 2d 969 (N.D. Cal. 2005). Insofar as [the speaker] may garner a
6    larger audience by employing a pseudonym, unveiling his true identity
7    diminishes the free exchange of ideas guaranteed by the Constitution.
8    <u>Art of Living</u>, <u>supra</u>, 2011 WL 5444622 at *9.

9    In this case, there is no question that the content of Mungergames.net is
10   political speech. The blog discusses qualifications of political candidates, political
11   activity and campaigns, and addresses controversial issues of public interest. As
12   such, it is the very essence of the First Amendment, and subject to its most rigorous
13   protections. In turn, the identity of the author of Mungergames.net is protected by the
14   First Amendment.

15   This Court therefore should not enforce a subpoena seeking the author's
16   identity without first addressing the constitutional implications. As discussed in
17   detail in the next section, this Court should first require Dhillon to produce evidence
18   establishing each and every element of her alleged copyright claim. The Court should
19   then engage in the required balancing test and quash the subpoena served on New
20   Dream Network, LLC.

21   VI. <u>DOE 1'S FIRST AMENDMENT RIGHTS OUTWEIGH DHILLON'S</u>
22   <u>PURPORTED NEED FOR DISCLOSURE</u>

23   Because anonymity is protected by the First Amendment, a court should quash
24   or modify a subpoena designed to breach anonymity. <u>See</u> Fed. R. Civ. P. 45(c)(3)(A)
25   (the "issuing court must quash or modify a subpoena" when it "requires disclosure of
26   privileged or other protected matter, if no exception or waiver applies"). <u>Arista</u>
27   <u>Records, LLC v. Doe 3</u>, 604 F.3d 110, 118 (2d Cir. 2010).

28

1          Numerous cases have discussed the limitations on the subpoena power when
2  that power is invoked in such a manner that it impacts First Amendment rights. See,
3  e.g., NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 461 (1958) (discussing the
4  First Amendment implications of a civil subpoena to disclose the membership list for
5  the NAACP); Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League, 89
6  F.R.D. 489 (C.D. Cal.1981) (discussing the First Amendment implications of a civil
7  subpoena to disclose the names of confidential journalistic sources); Snedigar v.
8  Hoddersen, 114 Wash.2d 153, 786 P.2d 781 (1990) (discussing the First Amendment
9  implications of a civil subpoena to disclose the meeting minutes of a political
10  association).

11          The subject of anonymous internet speech was discussed in SaleHoo Grp., Ltd.
12  v. ABC Co., 722 F. Supp. 2d 1210, 1213-14 (W.D. Wash. 2010).   That court
13  acknowledged that while federal district courts have adopted different standards
14  regarding the issue, the common theme is that the plaintiff must make a factual
15  showing that the case has merit before a court will enforce a subpoena that infringes
16  First Amendment rights.

17          Since the time of SaleHoo, the Ninth Circuit has addressed the issue and given
18  a nod to the highest standard of proof when political speech is concerned.   In
19  Anonymous Online Speakers, the Ninth Circuit stated, "the many federal district and
20  state courts that have dealt with this issue have employed a variety of standards to
21  benchmark whether an anonymous speaker's identity should be revealed." Supra at
22  1175.   In order to avoid compromising First Amendment rights in a baseless lawsuit,
23  the Ninth Circuit discussed the many standards of proof courts have employed,
24  ranging from a good faith showing, to a prima facie showing, to a motion to dismiss
25  standard.  The court then stated:

26          The district court in this case applied the most exacting standard,
27          established by the Delaware Supreme Court in Doe v. Cahill, 884 A.2d
28          451 (Del.2005). The Cahill standard requires plaintiffs to be able to

1   survive a hypothetical motion for summary judgment and give, or
2   attempt to give, notice to the speaker before discovering the anonymous
3   speaker's identity. Id. at 461. The court in Cahill therefore required that
4   the city councilman plaintiff " 'submit sufficient evidence to establish a
5   *prima facie* case for each essential element' " of his defamation claim.
6   Id. at 463 (citation omitted). The court pointed to its "concern[ ] that
7   setting the standard too low will chill potential posters from exercising
8   their First Amendment right to speak anonymously," Id. at 457, and
9   reasoned that "the summary judgment standard more appropriately
10  balances a defamation plaintiff's right to protect his reputation and a
11  defendant's right to speak anonymously." Id. at 462.

12  Anonymous Online Speakers, supra, 661 F.3d at 1175 – 76.

13  The Ninth Circuit further held "that the nature of the speech should be a driving
14  force in choosing a standard by which to balance the rights of anonymous speakers in
15  discovery disputes." Id. at 1177. The court noted that the speech at issue in
16  Anonymous Online Speakers was purely commercial speech, and thus "should be
17  afforded less protection than political, religious, or literary speech." Id.

18  In the end, the Anonymous Online Speakers court affirmed the lower court's
19  order to disclose some of the anonymous identities, and not to disclose some of the
20  other anonymous identities. The court emphasized that its ruling was based primarily
21  on the extremely limited nature of appellate review under a writ of mandamus, which
22  is an "'extraordinary' remedy limited to 'extraordinary' causes." Id. at 1173. That
23  highly deferential standard, combined with the lower protection for commercial
24  speech, guided the appellate decision to let the disclosure order stand. Id. at 1177.

25  However, the Anonymous Online Speakers did make an important
26  pronouncement regarding the standard for political speech, which is at issue in the
27  present case. The court noted that the district court applied the Cahill test, "which
28  elevates the bar to disclosure to the highest level. Because *Cahill* involved political

1   speech, that court's imposition of a heightened standard is understandable." Id. at
2   1177 (emphasis added).

3          Thus, the Ninth Circuit essentially adopted the Cahill holding that when the
4   speech at issue is political, a plaintiff seeking to force disclosure of an anonymous
5   speaker's identity must establish each element of her cause of action under the
6   rigorous summary judgment standard.[5]   This conclusion was echoed in the more
7   recent case of SI03, Inc. v. Bodybuilding.com, LLC, 441 F. App'x 431, 432 (9th Cir.
8   2011), ("We have recently explained that the rigorous Cahill standard is
9   'understandable' in a case 'involv[ing] political speech.'") (quoting Anonymous
10  online Speakers).

11         Based on this Ninth Circuit ruling, this court should also apply the Cahill
12  test to determine that Dhillon's subpoena should be quashed.   The Cahill case
13  concerned a defamation action brought by an elected town council member and his
14  wife.   The John Doe defendant had anonymously posted statements criticizing the
15  councilman on an internet blog, and plaintiffs sought to compel disclosure of John
16  Doe's identity by serving a deposition subpoena on the owner of John Doe's internet
17  IP address.    The Cahill case had facts nearly identical to this case: Doe 1
18  anonymously posted critical comments on an internet blog regarding Dhillon and
19  Munger, and Plaintiff now seeks to discovery Doe 1's identity by serving a subpoena
20  on Doe 1's internet host.

21         The Cahill court first addressed its grave concerns over the chilling effect of
22  ordering disclosure of the speaker's identity, stating that "Internet speech is often
23  anonymous. . . . For better or worse, then 'the audience must evaluate [a] speaker's
24  ideas based on her words alone. . . . This unique feature of the [the internet] promises
25  to make public debate in cyberspace less hierarchical and discriminatory' than in the

26  ─────────────

27         [5] Interestingly, the court also stated, "Even if the speech was commercial, the
     district court's choice of the Cahill test did not constitute clear error." Id.

28

1 real world because it disguises status indicators such as race, class and age." Doe v.
2 Cahill, supra, 884 A.2d at 455 – 56 (citations omitted).

3      Noting that "in general, our society accords greater weight to the value of free
4 speech than to the dangers of its misuse," the Cahill court held "that a defamation
5 plaintiff must satisfy a 'summary judgment' standard before obtaining the identity of
6 an anonymous defendant. We are concerned that setting the standard too low will
7 chill potential posters from exercising their First Amendment right to speak
8 anonymously." Id. at 457. Thus, to obtain discovery of an anonymous defendant's
9 identity under the summary judgment standard, the Cahill court required plaintiff to
10 "submit sufficient evidence to establish a *prima facie* case for each essential element
11 of the claim in question. In other words, the defamation plaintiff . . . must introduce
12 evidence creating a genuine issue of material fact for all elements . . . ." Id. at 463.
13 The Cahill court found plaintiff had not done so.

14      Notably, the Cahill case concerned alleged defamation rather than alleged
15 copyright infringement. Defamatory speech is not entitled to First Amendment
16 protection. Chaplinsky v. State of New Hampshire, 315 U.S. 568, 572 (1942).
17 Copyright law, however, contains certain exceptions to alleged infringement,
18 including the "Fair Use" doctrine discussed later in this brief. Thus, the Cahill
19 reasoning applies with even greater force to a claim of copyright infringement, which
20 is less harmful and more protected than defamatory speech.

21      In addition, several courts that have addressed this issue in the copyright
22 context have also held plaintiff to this heightened standard of proof before an
23 anonymous speaker's identity will be disclosed. To date, the Second Circuit is the
24 only federal circuit court that has addressed this issue in the copyright context. In
25 Arista Records, LLC v. Doe 3, 604 F.3d 110 (2010), plaintiff sought the identity of
26 individuals who had illegally downloaded music recordings by serving a subpoena on
27 the common ISP. Noting that the First Amendment does not "provide a license for
28 copyright infringement", the Arista court adopted a five-part test for quashing the

- 12 -
DEFENDANT DOE 1's MOTION TO QUASH SUBPOENA

1   subpoena that was set forth in <u>Sony Music Entertainment Inc. v. Does 1 – 40</u>, 326 F.

2   Supp. 2d 556 (S.D.N.Y. 2004), which is:

3        1 – the concreteness of the plaintiff's showing of <u>a prima facie claim</u> of

4   actionable harm,

5        2 – the specificity of the discovery request,

6        3 – the absence of alternative means to obtain the subpoenaed information,

7        4 – the need for subpoenaed information to advance the claim, and

8        5 – the objecting party's expectation of privacy.

9   <u>Arista</u>, <u>supra</u>, 604 F.2d at 119, <u>quoting</u>, <u>Sony Music</u>, <u>supra</u>, 326 F. Supp. at 564 – 65

10  (emphasis added).  Thus, the <u>Arista</u> court also required a prima facie showing of each

11  element of the cause of action.

12       A number of district courts have required the same in the intellectual property

13  context, including several from the Northern District of California, where this case is

14  pending.  <u>See, e.g.</u>, <u>Highfields</u>, <u>supra</u>, 385 F. Supp. 2d 969 (N.D. Cal. 2011) (granting

15  a motion to quash, stating plaintiff seeking to discover identity of anonymous internet

16  speaker must show there is real evidentiary basis for claim, including trademark

17  infringement); <u>SaleHoo</u>, <u>supra</u>, 722 F. Supp. 2d 1210, 1213-14 (W.D. Wash. 2010)

18  (granting a motion to quash, and stating "plaintiff must, in general allege a facially

19  valid cause of action and produce prima facie evidence to support all of the elements

20  of the cause of action within his or her control").

21       One particularly instructive case is <u>Art of Living Found. v. Does 1-10</u>, 2011

22  WL 5444622 (N.D. Cal. Nov. 9, 2011).  In <u>Art of Living</u>, an anonymous internet

23  poster sharply criticized the Art of Living Foundation ("AOLF"), which styled itself

24  an "international 'educational and humanitarian' organization dedicated to teaching

25  the spiritual lessons of 'His Holiness Ravi Shankar.'" <u>Id</u>. at *1.  The Doe defendants

26  published postings that called AOLF a manipulative and abusive cult, and also

27  allegedly published AOLF's "Breate Water Sound Manual."  Doe defendants claimed

28  they published the manual to "debunk the notion that Ravi Shankar is an enlightened

1  being", and that they removed the manual shortly after receiving a DMCA takedown
2  notice. Id. Plaintiff sued for copyright infringement and other claims.

3      The Art of Living court adopted the foregoing Highfields standard of proof,
4  based on the nature of the speech at issue, and quashed the subpoena. The court
5  stated, "In choosing the proper standard to apply, the district court should focus on
6  the "nature" of the speech conducted by the defendant, rather than the cause of action
7  alleged by the plaintiff. . . . For example, a more rigorous standard may be applicable
8  where the defendant's speech is political, religious or literary, while commercial
9  speech should be subject to a lesser standard." Id. at *5. (citations omitted) (emphasis
10 added).

11     The court found that defendants' speech in Art of Living raised substantial
12 First Amendment concerns because it was commentary on a public issue. It thus was
13 subject to the most rigorous protections, and the Highfields standard was appropriate:

15      Highfields establishes a two-part test for determining whether to allow
16      discovery seeking the identity of an anonymous defendant: (1) The
17      plaintiff must produce competent evidence supporting a finding of each
18      fact that is essential to a given cause of action; and (2) if the plaintiff
19      makes a sufficient evidentiary showing, the court must compare the
20      magnitude of the harms that would be caused to the competing interests
21      by a ruling in favor of the plaintiff and by a ruling in favor of the
22      defendant. Id. 975–76.

23 Art of Living, supra, 2011 WL 5444622 at * 7.

24      The Highfields court explained these two prongs as follows:

25      It is not enough for a plaintiff simply to plead and pray. Allegation and
26      speculation are insufficient. The standards that inform Rule 8 and Rule
27      12(b)(6) offer too little protection to the defendant's competing interests.
28      Thus, the plaintiff must adduce *competent evidence*-and the evidence

1  plaintiff adduces must address *all* of the inferences of fact that plaintiff
2  would need to prove in order to prevail under at least one of the causes
3  of action plaintiff asserts. In other words, the evidence that plaintiff
4  adduces must, if unrebutted, tend to support a finding of *each* fact that is
5  essential to a given cause of action. The court may not enforce the
6  subpoena if, under plaintiff's showing, any *essential* fact or finding lacks
7  the requisite evidentiary support.

8  . . .

9  The court proceeds to the second component of the test if, but only if, the
10 plaintiff makes an evidentiary showing sufficient to satisfy the court in
11 the first component of the test. If reached, the second component of the
12 test requires the court to assess and compare the magnitude of the harms
13 that would be caused to the competing interests by a ruling in favor of
14 plaintiff and by a ruling in favor of defendant.

15 Highfields, supra, 385 F. Supp. 2d at 974-76.

16    Based on this standard, the Art of Living court found that the chilling impact of
17 disclosing defendants' identities would create a substantial cost to the public.  As
18 stated in Highfields, "When word gets out that the price tag of effective sardonic
19 speech [includes disclosure of the speaker's identity], that speech likely will
20 disappear." Art of Living, supra, 2011 WL 5444622 at * 7 (quoting, Highfields, 385
21 F. Supp. 2d at 981). The Art of Living case is squarely applicable to the present case,
22 and this court should follow its persuasive and well-supported reasoning.

23    In the instant case, Dhillon certainly has not made such an evidentiary
24 showing.   The fair use doctrine serves as an absolute defense to copyright
25 infringement in this case.   Therefore, this Court should quash the subpoena and
26 should not order disclosure of the identity of Doe 1 or any of the Doe defendants.

27

28

1    VII.  DHILLON  FAILED  TO  MAKE  A  SUFFICIENT  SHOWING  OF

2    INFRINGEMENT IN LIGHT OF THE "FAIR USE" DOCTRINE

3         To establish infringement of copyright, "two elements must be proven: (1)

4    ownership of a valid copyright, and (2) copying of constituent elements of the work

5    that are original." Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S.

6    340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). See also, 17 U.S.C. § 501(a). In

7    UMG Recordings, Inc. v. Augusto, 628 F.3d 1175, 1178 (9th Cir.2011), the court

8    phrased the second element as "violation by the alleged infringer of at least one of the

9    exclusive rights granted to copyright owners by the Copyright Act."

10        Dhillon cannot meet her burden of proof on these elements. Specifically, she

11   cannot present sufficient evidence of actual infringement.  She alleges that Doe 1

12   used her political campaign photo in an article entitled "Meet Harmeet" on the

13   mungergames.net political blog.   Under the "Fair Use" doctrine, this is not

14   infringement of a copyrighted work. As stated in the Art of Living case, supra:

15        [E]vidence of copyright infringement does not *automatically* remove the

16        speech at issue from the scope of the First Amendment. While "the First

17        Amendment does not shield copyright infringement," (citation omitted)

18        "copyright law contains built-in First Amendment accommodations."

19        Eldred v. Ashcroft, 537 U.S. 186, 219–20 (2003).  Perhaps the most

20        important is the doctrine of fair use . . . . 17 U.S.C. § 107; see also, Elvis

21        Presley Enters. v. Passport Video, 349 F.3d 622, 626 (9th Cir.2003)

22        ("First Amendment concerns in copyright cases are subsumed within the

23        fair use inquiry.").

24   Art of Living, supra, 2011 WL 5444622 at *6.

25        The "fair use" of a copyrighted work "for purposes such as criticism, comment,

26   news reporting, teaching (including multiple copies for classroom use), scholarship,

27   or research" is not an infringement of copyright.  In determining whether the use

28

1 made of a work in any particular case is a fair use the factors to be considered shall
2 include--

3     **(1)** the purpose and character of the use, including whether such use is of a
4     commercial nature or is for nonprofit educational purposes;

5     **(2)** the nature of the copyrighted work;

6     **(3)** the amount and substantiality of the portion used in relation to the
7     copyrighted work as a whole; and

8     **(4)** the effect of the use upon the potential market for or value of the
9     copyrighted work.

10 The fact that a work is unpublished shall not itself bar a finding of fair use if such
11 finding is made upon consideration of all the above factors. 17 U.S.C. § 107.

12     This exception "permits courts to avoid rigid application of the copyright
13 statute when, on occasion, it would stifle the very creativity which that law is
14 designed to foster." Kelly v. Arriba Soft Corp., 336 F. 3d 811, 817 (9th Cir. 2003),
15 quoting, Dr. Seuss Enters., L.P v. Penguin Books USA, Inc., 109 F. 3d 1394, 1399
16 (9th Cir. 1997). The Arriba Soft court also stated, "We must balance these factors in
17 light of the objectives of copyright law, rather than view them as definitive or
18 determinative tests." Arriba Soft, supra, 109 F.3d at 1399.

19     A. PURPOSE AND CHARACTER OF THE USE.

20     The question regarding this factor is "whether the new work merely
21 supersede[s] the objects of the original creation, or instead adds something new, with
22 a further purpose of different character, altering the first with new expression,
23 meaning, or message; it asks, in other words, whether and to what extent the new
24 work is transformative." Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 579
25 (1994). The more transformative the new work, the less important the other factors,
26 including commercialism, become." Id. "Typically, a work created for commercial
27 use is less likely to bear fair use protection; however, the commercial/non-
28 commercial distinction is less significant the more transformative the work is."

1   Northland Family Planning Clinic, Inc. v. Center for Bio-Ethical Reform, 868
2   F.Supp.2d 962, 970 (C.D. Cal. 2012).

3       Cases have consistently held that reproducing a photographic image for
4   purposes of criticism or commentary is transformative, and thus cannot constitute
5   copyright infringement.  In the Ninth Circuit Arriba Soft case, defendant was an
6   internet search engine that displayed search results in the form of thumbnail
7   photographic images.  Plaintiff was a photographer whose photos of the American
8   West appeared in defendant's search engine results.

9       The court focused on the fact that the search engine's images served an entirely
10  different function that the original photographic images, and found no infringement.
11  While the photographer's "images are used to portray scenes . . . in an aesthetic
12  manner, . . . Arriba's search engine functions as a tool to help index and improve
13  access to images . . . ." Arriba Soft, supra, 336 F.3d at 818.

14      In Hustler Magazine, Inc. v. Moral Majority, Inc.,606 F.Supp. 1526, 1536
15  (C.D. Cal. 1985), aff'd, 796 F.2d 1148 (9th Cir. 1986), Hustler magazine brought an
16  infringement action against a fundamentalist minister for reproducing the magazine's
17  parody ads that prominently featured the minister.  The court found that the minister
18  had reproduced the ad as part of a "broader, continuing debate over pornography and
19  other social issues" between the magazine and the minister.  The court found no
20  infringement and granted summary judgment in favor of the minister.

21      The court stated, "[W]hen an act of copying occurs in the course of a political,
22  social or moral debate, the public interest in free expression is one factor favoring a
23  finding of fair use."  Id. See also, Keep Thomson Governor Committee v. Citizens for
24  Gallen Committee, 457 F.Supp. 957, 959–60 (D.N.H. 1978) (political committee's
25  use of a portion of rival candidate's musical composition amounted to fair use in light
26  of public interest in full debate over election and absence of injury to plaintiff).

27      The recent Art of Living case also discussed the fair use doctrine in the context
28  of reproducing an entire pamphlet for purposes of criticizing its author as a sham and

1   a fraud. Although the <u>Art of Living</u> court stated it did not need to decide whether the
2   copying was fair use, "the circumstances here create a substantial question as to
3   whether the doctrine applies." <u>Art of Living</u>, <u>supra</u>, 2011 WL 5444622 at *5. <u>See</u>
4   <u>also</u>, <u>New Era Publications Intern., ApS v. Carol Pub. Group</u>, 904 F.2d 152 (2d
5   Cir.1990) (the use of copyrighted quotations in a biography of Church of Scientology
6   founder L. Ron. Hubbard was protected where the intended purpose of the work was
7   to show that "Hubbard was a charlatan and the Church a dangerous cult").

8        Several other recent district court opinions have found that using a photo for
9   purposes of criticizing the subject of the photo is fair use. See <u>Sedgwick Claims</u>
10   <u>Mgmt. Servs., Inc. v. Delsman</u>, 2009 WL 2157573, at *5 (N.D. Cal. 2009) (finding
11   that defendant's use of photographs of two of plaintiff's executives as a vehicle for
12   criticizing plaintiff's alleged business practices was "fundamentally different" than
13   the original promotional reason), <u>aff'd</u>, 422 F. App'x 651 (9th Cir. 2011); <u>Ascend</u>
14   <u>Healthcare Corp. v. Wells</u>, Slip Copy, 2013 WL 1010589 (E.D.N.C. 2013) (finding
15   use of two entire photographs fair use, on a blog criticizing the mental hospital shown
16   in the photographs); <u>Baraban v. Time Warner Inc.</u>, 54 USPQ2d 1759 (S.D.N.Y. 2000)
17   (granting summary judgment for accused infringer, which had taken an entire
18   photograph of a nuclear plant and used it in a chapter of a book criticizing the nuclear
19   industry's and the government's portrayal of nuclear power as safe).

20        In the present case, the use of Dhillon's photograph was clearly transformative.
21   Ms. Dhillon's stated original purpose of the photo was for publicity for a political
22   campaign, whereas mungergames.net used the photo for purposes of criticizing Ms.
23   Dhillon's political activities. These two purposes could not be more different.

24        In addition, mungergames.net did not use the photo for commercial purposes,
25   which increases the inference of fair use. Instead, mungergames.net posted the photo
26   on a free internet blog for purposes of engaging in political debate over an issue of
27   public concern. Mungergames.net's use is, therefore, is at the very core of the First
28   Amendment. It is subject to the most rigorous protection.

B. NATURE OF THE COPYRIGHTED WORK

The Ninth Circuit has described this factor well in the Arriba Soft case, stating: Works that are creative in nature are closer to the core of intended copyright protection than are more fact-based works." Photographs that are meant to be viewed by the public for informative and aesthetic purposes . . . are generally creative in nature. The fact that a work is published or unpublished also is a critical element of its nature. Published works are more likely to qualify as fair use because the first appearance of the artist's expression has already occurred.

Arriba Soft, supra, 336 F.3d at 820, quoting, Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 564 (1985) (noting that the scope of fair use is narrower with respect to unpublished works because the author's right to control the first public appearance of his work weighs against the use of his work before its release).

In this case, Ms. Dhillon has, by her own allegations, extensively published and released her publicity headshot photo to the general public over the course of the past several years. As she freely admits in paragraph 14 of her Complaint, "Ms. Dhillon has used the 2008 Photograph, including the Headshot Photograph, in connection with her campaign for Member of the State Assembly, beginning in or around June 2008, as well as in connection with her subsequent campaigns, political activities, and various professional marketing efforts." (Cigel Decl., Exh. 7, Complaint at ¶ 14).

Therefore, the single isolated use of Dhillon's widely published headshot publicity is more likely to be fair use than not, especially because she is a political public figure. In addition, although a photographer's use of lighting or angle or setting sometimes may be deemed "creative", Ms. Dhillon's purpose in commissioning the photo (which seems to have been taken outside with her standing in sunlight next to a building) was for campaign publicity. (Cigel Decl., Exh. 7, Complaint at ¶ 11). The subject photo was obviously for the purpose of identification

1  and face recognition rather than creative aesthetics.  Thus, this factor weighs in
2  mungergames.net's favor as well.

3        C. AMOUNT AND SUBSTANTIALITY OF PORTION USED

4        As stated in Arriba Soft, "the extent of permissible copying varies with the
5  purpose and character of the use. (citation omitted) If the secondary user only copies
6  as much as is necessary for his or her intended use, then this factor will not weigh
7  against him or her." Arriba Soft, supra, 336 F.3d at 820 – 821.  The Arriba Soft court
8  continued, "It was necessary for Arriba to copy the entire image to allow users to
9  recognize the image and decide whether to pursue more information. . . . If Arriba
10  only copied part of the image, it would be more difficult to identify it, thereby
11  reducing the usefulness of the visual search engine." Id. at 821.

12        In the present case, the purpose of mungergames.net's use of the photograph
13  was to allow readers of mungergames.net to identify Ms. Dhillon, the subject of the
14  political blog entry.  It is impossible to use only a portion of that headshot
15  photograph.  It should be beyond dispute that mungergames.net copied only as much
16  of the photo as was necessary.

17        D. EFFECT OF THE USE UPON THE POTENTIAL MARKET FOR OR
18           VALUE OF THE COPYRIGHTED WORK

19        In discussing this factor, the Arriba Soft court stated that courts should consider
20  whether the alleged copying harmed the copyright owner's market, or would have a
21  substantial adverse impact on the potential market for the original. Id. at 821.  In this
22  case, there simply is no market for Dhillon's widely-used publicity headshot
23  photograph.  She cannot identify any market and has never alleged that she sells her
24  publicity headshot for profit.  On the contrary, as already stated, she used the photo at
25  issue in political campaigns and in marketing efforts.

26        Doe 1 cannot conceive of any market that is harmed by copying a widely
27  published publicity headshot into a political blog for purposes of political debate.  By
28  its nature, a publicity photo is distributed free and in mass for purposes of generating

1 media attention and notoriety. In addition, that photograph has been removed from
2 the article on mungergames.net. Thus, this factor weighs in mungergames.net's favor
3 as well.

4      In summary, each of the four "Fair Use" factors weigh heavily in finding that
5 there was no copyright infringement. The photo was used for First Amendment
6 political commentary, a purpose very different from the original purpose of campaign
7 publicity, and therefore "transformative." The photo had been widely distributed and
8 published prior to its appearance in mungergames.net, which copied only as much of
9 the photo as was necessary, and there was no impact on any potential market for a
10 photo that was used for publicity rather than sold.

11      Thus, because mungergames.net's alleged copying was "Fair Use", there is no
12 copyright infringement. Dhillon cannot present any evidence to counter a finding of
13 fair use, and thus she could not withstand a motion for summary judgment as required
14 for political speech.

15 VIII. DOE 1 WOULD SUFFER GREAT HARM IF HIS IDENTITY WERE
16      DISCLOSED

17      As stated in the cases discussed above, even if a plaintiff submits sufficient
18 evidence of infringement, courts should still balance the potential harm to the
19 defendant against the plaintiff's need for disclosure of his identity. See, e.g.,
20 SaleHoo, supra, 722 F. Supp. 2d at 1216-17; Highfields, supra, 385 F.Supp.2d at 975
21 – 76 (court should "assess and compare the magnitude of the harms that would be
22 caused to the competing interests by a ruling in favor of plaintiff and by a ruling in
23 favor of defendant.")

24      As noted by the Cahill court, a plaintiff could bring a non-meritorious action
25 against an anonymous defendant, knowing they will lose, but still be successful in
26 their main goal: unmasking their critic's identity. "After obtaining the identity of an
27 anonymous critic through the compulsory discovery process, a . . . plaintiff who
28 either loses on the merits or fails to pursue a lawsuit is still free to engage in extra-

1 judicial self-help remedies; <u>more bluntly, the plaintiff can simply seek revenge or</u>
2 <u>retribution</u>." Cahill, supra, 884 A.2d at 457 (emphasis added). That is one of the
3 primary reasons the Cahill court adopted a "summary judgment" standard of proof for
4 political speech, rather than the lower good faith standard. Id.

5 Similarly, in this case, Dhillon's \$250.00 copyright infringement claim does
6 not appear sincere. It is merely a vehicle to serve multiple subpoenas to unmask the
7 identity of the Doe defendants, and thereby chill free speech under the First
8 Amendment. In addition, as Dhillon certainly knows, she is not even entitled to the
9 attorneys' fees she seeks in her Complaint, nor to any statutory damages.
10 Mungergames.net's alleged infringement occurred on February 12, 2013. However,
11 Dhillon did not seek to register her copyright until February 21, 2013, when she
12 submitted her complete application. (Cigel Decl., Exh. "E", Complaint at ¶¶ 15, 17).
13 Where a copyright owner fails to register its work within three months of publication
14 and the purported infringement occurs prior to registration, the copyright owner is not
15 entitled to statutory damages or attorney's fees. 17 U.S.C. § 412.

16 Thus, this case is not about a true interest in protecting a copyright, or seeking
17 compensation. Instead, this case smacks of improper intent to seek the identity of,
18 and then seek revenge against, someone who is critical of Dhillon's and Munger's
19 politics. "The spirit of the First Amendment applies to the copyright laws at least to
20 the extent that the courts should not tolerate any attempted interference with the
21 public's right to be informed regarding matters of general interest when anyone seeks
22 to use the copyright statute which was designed to protect interests of quite a different
23 nature." Rosemont Enterprises, Inc. v. Random House, Inc., 366 F.2d 303, 311 (2d
24 Cir. 1966) (Lombard, J. and Hays, J., concurring).

25 In the Rosemont case, the Court of Appeals reversed the grant of an injunction,
26 on copyright grounds, to a Howard Hughes-owned entity that had sought to prevent
27 publication of a biography that was critical of Hughes. Id. The concurring Justices
28 found it significant that the record "pointed to the existence of a scheme developed by

1  Hughes and his attorneys and employees to prevent the publication of any biography
2  of Hughes and, in particular, the [critical] biography. Id. at 311 - 12.

3    Similarly, in this case, the reasonable inference from Dhillon's complaint is
4  that this matter is not about copyright infringement at all. Dhillon was not selling her
5  headshot, but was instead publishing it freely to anyone who would give her
6  campaign publicity. Even so, Dhillon is so determined to find out who is behind the
7  mungergames.net blog that she is now seeking to obtain two additional subpoenas for
8  that same purpose in the Northern District of California.

9    Thus, the potential harm to Doe 1 is great. By contrast, the potential harm to
10  Dhillon if this subpoena is quashed is nonexistent. The cost to Dhillon of pursuing
11  this matter to judgment is exponentially greater than the $250 in damages she seeks.
12  Balancing these competing interests, this Court should quash this subpoena.

13  IX. CONCLUSION

14    For all the foregoing reasons, Doe 1 respectfully requests this Court to quash
15  the subpoena dated July 22, 2013.

16

17  Dated:  September 20, 2013  **THE CIGEL LAW GROUP, P.C.**

18

19         By: _____
20         Rick A. Cigel
21         Attorneys for Defendant
       DOE 1

22

23

24

25

26

27

28

- 24 -
DEFENDANT DOE 1's MOTION TO QUASH SUBPOENA

1                              PROOF OF SERVICE

2    UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

3    CASE NAME: **HARMEET K. DHILLON v. DOE 1**

4

5          The undersigned declares: I am a resident of the United States and am employed in the City and County of Los Angeles, State of California; I am over the age of eighteen years and

6    not a party to the within action; my business address is 10866 Wilshire Boulevard, Suite 400, Los Angeles, California 90024.

7

8          On September 20, 2013, I served the following documents:

9      **1. NOTICE OF MOTION AND MOTION BY DEFENDANT DOE 1 TO QUASH SUBPOENA ISSUED IN CENTRAL DISTRICT OF CALIFORNIA TO NEW**

10        **DREAM NETWORK, LLC**

11      **2. DECLARATION OF RICK A. CIGEL IN SUPPORT OF MOTION BY DEFENDANT DOE 1 TO QUASH SUBPOENA ISSUED IN CENTRAL**

12        **DISTRICT OF CALIFORNIA TO NEW DREAM NETWORK, LLC**

13      **3. CIVIL CASE COVER SHEET**

14      **4. CERTIFICATE OF INTERESTED PARTIES**

15    By serving in the manner described below to the interested parties herein and addressed to:

16    Harold P. Smith                       Joel Voelzke

17    Krista L. Shoquist                Intellectual Property Law Office of Joel
Dhillon & Smith, LLP             Voelzke

18    177 Post Street, Suite 700          24772 W. Saddle Peak Road
San Francisco, CA 94108            Malibu, CA 90265-3042

19

20    *Attorneys for Dhillon*                 *Attorney for New Dream Network*

21    [X]  **MAIL:** I caused such envelope(s) to be deposited in the mail at my business address, with postage thereon fully prepaid, addressed to the addressee(s) designated. I am readily familiar

22        with the business practice of collecting and processing correspondence to be deposited with the United States Postal Service on that same day in the ordinary course of business.

23

24    [X]  **(FEDERAL):** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

25          Executed on September 20, 2013 at Los Angeles, California.

26

27                                        Wanda Taylor

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ John F. Walter _____ and the assigned Magistrate Judge is _____ Margaret A. Nagle _____ .

The case number on all documents filed with the Court should read as follows:

### 2:13-CV-7003-JFW (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

September 20, 2013
_____
Date

By   MDAVIS _____
Deputy Clerk

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

☐ Western Division
312 N. Spring Street, G-8
Los Angeles, CA 90012

☐ Southern Division
411 West Fourth St., Ste 1053
Santa Ana, CA 92701

☐ Eastern Division
3470 Twelfth Street, Room 134
Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| Harmeet K. Dhillon | Doe 1 and Does 2 through 10 |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.)<br>Dhillon & Smith, LLP<br>177 Post Street, Suite 700<br>San Francisco, CA 94108<br>(415) 433-1700 | (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.)<br>The Cigel Law Group, P.C.<br>10866 Wilshire Blvd., Suite 400<br>Los Angeles, CA 90024<br>(424) 901-8513 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding ☐ 2. Removed from State Court ☐ 3. Remanded from Appellate Court ☐ 4. Reinstated or Reopened ☐ 5. Transferred from Another District (Specify) ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No ☒ **MONEY DEMANDED IN COMPLAINT:** $ 250

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
This is a motion to quash a subpoena issued in this district regarding a pending copyright case in the Northern District of California

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☒ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | **TORTS** | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **PERSONAL PROPERTY** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL PROPERTY** | ☐ 370 Other Fraud | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 371 Truth in Lending | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 380 Other Personal Property Damage | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 385 Property Damage Product Liability | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | **BANKRUPTCY** | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | **CIVIL RIGHTS** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 440 Other Civil Rights | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 441 Voting | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 710 Fair Labor Standards Act | |
| | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/ Accomodations | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 740 Railway Labor Act | |
| | ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | | ☐ 448 Education | ☐ 790 Other Labor Litigation | |
| | | | | ☐ 791 Employee Ret. Inc. Security Act | |

CV13-07003

**FOR OFFICE USE ONLY:** Case Number:

CV-71 (09/13)   CIVIL COVER SHEET   Page 1 of 3

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII. VENUE**: Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes   ☒ No | Los Angeles | Western |
| If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | Ventura, Santa Barbara, or San Luis Obispo | Western |
| | Orange | Southern |
| | Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF? Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT? Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| ☐ Yes   ☒ No | ☐ Los Angeles | ☐ Los Angeles | Western |
| If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |
| Indicate the location in which a majority of claims arose: | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |

| C.1. Is either of the following true? If so, check the one that applies: | C.2. Is either of the following true? If so, check the one that applies: |
|---|---|
| ☐ 2 or more answers in Column C | ☐ 2 or more answers in Column D |
| ☐ only 1 answer in Column C and no answers in Column D | ☐ only 1 answer in Column D and no answers in Column C |
| Your case will initially be assigned to the SOUTHERN DIVISION. Enter "Southern" in response to Question D, below. | Your case will initially be assigned to the EASTERN DIVISION. Enter "Eastern" in response to Question D, below. |
| If none applies, answer question C2 to the right. ➡ | If none applies, go to the box below. ⬇ |

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | Western |

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ NO    ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ NO    ☐ YES

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):** _____    DATE: 9/20/2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

PROOF OF SERVICE

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

CASE NAME: **HARMEET K. DHILLON v. DOE 1**

The undersigned declares: I am a resident of the United States and am employed in the City and County of Los Angeles, State of California; I am over the age of eighteen years and not a party to the within action; my business address is 10866 Wilshire Boulevard, Suite 400, Los Angeles, California 90024.

On September 20, 2013, I served the following documents:

1. **NOTICE OF MOTION AND MOTION BY DEFENDANT DOE 1 TO QUASH SUBPOENA ISSUED IN CENTRAL DISTRICT OF CALIFORNIA TO NEW DREAM NETWORK, LLC**

2. **DECLARATION OF RICK A. CIGEL IN SUPPORT OF MOTION BY DEFENDANT DOE 1 TO QUASH SUBPOENA ISSUED IN CENTRAL DISTRICT OF CALIFORNIA TO NEW DREAM NETWORK, LLC**

3. **CIVIL CASE COVER SHEET**

4. **CERTIFICATE OF INTERESTED PARTIES**

By serving in the manner described below to the interested parties herein and addressed to:

| | |
|---|---|
| Harold P. Smith | Joel Voelzke |
| Krista L. Shoquist | Intellectual Property Law Office of Joel |
| Dhillon & Smith, LLP | Voelzke |
| 177 Post Street, Suite 700 | 24772 W. Saddle Peak Road |
| San Francisco, CA 94108 | Malibu, CA 90265-3042 |

*Attorneys for Dhillon*                    *Attorney for New Dream Network*

☒ **MAIL:** I caused such envelope(s) to be deposited in the mail at my business address, with postage thereon fully prepaid, addressed to the addressee(s) designated. I am readily familiar with the business practice of collecting and processing correspondence to be deposited with the United States Postal Service on that same day in the ordinary course of business.

☒ **(FEDERAL):** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on September 20, 2013 at Los Angeles, California.

Wanda Taylor