Rick A. Cigel, Esq. (SBN 105424)
THE CIGEL LAW GROUP, P.C.
10866 Wilshire Blvd., Suite 400
Los Angeles, California 90024
Tel: (424) 901-8513
Fax:   (424) 901-8514

Attorneys for Defendant
DOE 1

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARMEET K. DHILLON, an individual, | Case No. CV 13-7003-JFW (MANx) |
| Plaintiff, | REPLY BRIEF IN SUPPORT OF MOTION BY DEFENDANT DOE 1 TO QUASH SUBPOENA ISSUED IN CENTRAL DISTRICT OF CALIFORNIA TO NEW DREAM NETWORK, LLC |
| vs. | |
| DOE 1, an unknown individual, and DOES 2 through 10, | [Concurrently filed with Declaration of Rick A. Cigel] |
| Defendants. | (Action pending in the Northern District of California: Case No.13-cv-01465-JCS) |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................. 1

II.  DOE 1'S FIRST AMENDMENT RIGHTS OUTWEIGH DHILLON'S PURPORTED NEED FOR DISCLOSURE .................................................... 2

III. THIS COURT SHOULD CONSIDER THE "FAIR USE" DOCTRINE IN DETERMINING WHETHER TO QUASH PLAINTIFF'S SUBPOENA .......... 4

IV.  THE "FAIR USE" FACTORS WEIGH IN FAVOR OF QUASHING PLAINTIFF'S SUBPOENA .......................................................... 6

   A. PURPOSE AND CHARACTER OF THE USE.......................................... 6

   B. NATURE OF THE COPYRIGHTED WORK.......................................... 10

   C. AMOUNT AND SUBSTANTIALITY OF PORTION USED .................... 10

   D. EFFECT OF THE USE UPON THE POTENTIAL MARKET FOR OR VALUE OF THE COPYRIGHTED WORK............................................. 10

V.   THE NINTH CIRCUIT HAS ADOPTED THE HIGHEST BURDEN OF PROOF WHEN POLITICAL SPEECH IS AT STAKE ............................................. 11

VI.  THE MEET AND CONFER REQUIREMENTS HAVE BEEN MET …….....…14

VII. CONCLUSION ................................................................. 15

# TABLE OF AUTHORITIES

Cases

Arista Records LLC v. Doe, 604 F.3d 110 (2d Cir.2010) ..............................6

Art of Living Foundation v. Does 1 – 10,
   2011 WL 5444622 (N.D. Cal. 2011) .............................................passim

Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605 (2d Cir.2006) ..........9

Calkins v. Playboy Enterprises Intern., Inc.,
   561 F. Supp. 2d 1136 (E.D. Cal. 2008) ......................................8

Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569 (1994). ......................6, 9

Chula Vista Citizens for Jobs & Fair Competition v. Norris,
   875 F. Supp. 2d 1128 (S.D. Cal. 2012) ....................................12

Dash v. Mayweather, ___ F.3d ___,
   2013 WL 5365967 at *12 (4th Cir. 2013)…………………………………11

Dendrite Intern., Inc. v. Doe No. 3, 342 N.J.Super. 134,
   775 A.2d 756 (N.J. Super. 2001) .........................................13

Doe v. Cahill, 884 A.2d 451 (Del.2005)........................................13

Elvis Presley Enters. v. Passport Video, 349 F.3d 622 (9th Cir. 2003) ......................5

Haberman v. Hustler Magazine, Inc., 626 F. Supp. 201 (D. Mass. 1986) .................10

Highfields Capital Management, L.P v. Doe,
   385 F. Supp. 2d 969 (N.D. Cal. 2005)........................................2, 5, 12

In re Anonymous Online Speakers, 661 F.3d 1168 (9th Cir. 2011)..................3, 12, 13

Kelly v. Arriba Soft Corp., 336 F.3d 811 (9th Cir.2003) ...........................7, 8, 10

L.A. News Serv. v. Reuters Television Int'l, 149 F.3d 987 (9th Cir. 1998) .................9

Leibovitz v. Paramount Pictures Corp., 137 F.3d 109 (2d Cir.1998) ..........................7

Mattel, Inc. v. Walking Mountain Productions, 353 F.3d 792 (9th Cir. 2003) ..............7

Meyer v. Grant, 486 U.S. 414, 422, 425 (1988).........................................12

Nunez v. Caribbean Intern. News Corp., 235 F.3d 18 (1st Cir.2000).................7, 8, 10

*Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146 (9th Cir. 2007) ........................... 7

*Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010) ................................................. 2

Sedgwick Claims Management Services, Inc. v. Delsman,

  2009 WL 2157573 (N.D. Cal. 2009), aff'd, 422 Fed.Appx. 651(9th Cir. 2011)........ 7

SaleHoo Grp., Ltd. v. ABC Co., 722 F. Supp. 2d 1210 (W.D. Wash. 2010)............... 2

Selzer v. Green Day, Inc., 725 F.3d 1170 (9th Cir. 2013)................................................ 4

SI03, Inc. v. Bodybuilding.com, LLC, 441 F. App'x 431 (9th Cir. 2011) ........... 12, 13

Signature Mgmt. Team, LLC v. Automatic, Inc., ___F. Supp. 2d ___,

  2013 WL 1739480 at *9 (N.D. Cal. 2013) ........................................................ 3, 5

Sony Music Entertainment, Inc. v. Does 1 – 40,

  326 F. Supp. 2d 556 (S.D.N.Y. 2004). ..................................................................... 12

Wade Williams Distribution, Inc. v. American Broadcasting Co., Inc.,

  2005 WL 774275 (S.D.N.Y 2005)............................................................................... 9


Statutes

17 U.S.C. § 107 .................................................................................................................. 5

Fed. R. Civ. P. 45 .............................................................................................................. 15

Secondary Sources

N. Snow, "Judge Playing Jury: Constitutional Conflicts In Deciding Fair Use On

  Summary Judgment," 44 U.C. Davis L. Rev. 483, 489 (2010) ................................ 4

## MEMORANDUM OF POINTS AND AUTHORITIES

I.   INTRODUCTION

There is no dispute that this motion to quash implicates serious Constitutional rights that cannot be invaded lightly.   The U.S. Supreme Court has held unequivocally that anonymous internet speech is protected by the First Amendment, and that political speech is at the core of First Amendment protections.

Ninth Circuit precedent requires Plaintiff to present a valid copyright claim sufficient to withstand a summary judgment motion before she can invade Doe 1's Constitutional rights.  Plaintiff asserts the standard is lower, and only requires a prima facie evidentiary showing.  No matter what standard this Court employs, however, Plaintiff cannot meet it.

That is because Doe 1's alleged "use" of Plaintiff's publicity headshot for purposes of political commentary is Fair Use.  Under all discovered cases, using a photo for purposes of criticism and commentary is "transformative" and thus Fair Use.  Plaintiff argues that this Court cannot consider Fair Use at this juncture, but Plaintiff is wrong.  The cases Plaintiff cites for this proposition actually stand for the opposite, and clearly state that a court absolutely should evaluate Fair Use when considering a motion to quash a subpoena seeking an anonymous speaker's identity.

In addition, even if this Court were to find that Plaintiff had made a sufficient showing of copyright infringement – which Doe 1 adamantly asserts she did not and cannot do – this Court would still have to balance the competing harms.  Case law provides that disclosure of an anonymous political speaker's identity can wreak havoc on the speaker's life, inviting retaliation and ostracism, and also have a substantial chilling effect on future political debate.   This is precisely what the First Amendment was designed to protect against.  It is especially important to protect anonymity in this case because mungergames.net risks harsh retaliation by Charles Munger, Jr., the multi-millionaire subject of criticism on the website.

By contrast, Plaintiff will suffer no conceivable harm if this Court quashes the subpoena at issue. Counsel for Doe 1 will accept service on behalf of Doe 1 so that Plaintiff can proceed with her action. Doe 1 also anticipates moving swiftly toward summary judgment on the issue of Fair Use, or alternatively a motion to dismiss. There are no disputed material facts regarding what use was made of Plaintiff's out-of-date stock publicity headshot, and the court in the Northern District of California (where the action is pending) can determine Fair Use as a matter of law based on its own review of the article that was posted on the mungergames.net website.

II.   DOE 1'S FIRST AMENDMENT RIGHTS OUTWEIGH DHILLON'S PURPORTED NEED FOR DISCLOSURE

As thoroughly discussed in Doe 1's opening brief, regardless of what standard of proof this Court employs, it must balance the potential harm to the defendant against the plaintiff's need for disclosure of his identity. See, SaleHoo Grp., Ltd. v. ABC Co., 722 F. Supp. 2d 1210, 1216-17 (W.D. Wash. 2010); Highfields Capital Mgmt., L.P v. Doe, 385 F. Supp. 2d 969, 975 (N.D. Cal. 2005) (court should "assess and compare the magnitude of the harms that would be caused to the competing interests by a ruling in favor of plaintiff and by a ruling in favor of defendant.")

Plaintiff argues that Doe 1 has not provided any proof of the potential harm he[1] would suffer. First, the courts do not require such proof, and second, it is logically impossible for Doe 1 to provide "proof" of events that have not yet occurred.

The court in Art of Living Foundation v. Does 1 – 10, 2011 WL 5444622 (N.D. Cal. 2011) addressed this issue and found that the declarations submitted by defendant were of little value. Instead, the harm to defendant caused by disclosure was presumed as a matter of law. Relying heavily on the binding Ninth Circuit precedents of Perry v. Schwarzenegger, 591 F.3d 1147 (9th Cir. 2010) and In re

---

[1] No information is connoted by either the gender of pronouns, or the use of singular pronouns.

<u>Anonymous Online Speakers</u>, 661 F.3d 1168, 1173 (9th Cir. 2011), the <u>Art of Living</u> court stated, "[T]o the extent that [defendant's] anonymity facilitates free speech, the disclosure of his identity is itself irreparable harm." <u>Art of Living</u>, <u>supra</u>, 2011 WL 5444622 at *9, *quoting* <u>Perry</u>, <u>supra</u>, 591 F.3d at 1158 ("One injury to Proponents' First Amendment rights is the disclosure itself. Regardless of whether they prevail at trial, this injury will not be remediable on appeal.").

The <u>Art of Living</u> court went on to note that defendant had "submitted a declaration expressing his concern that the adherents of [Plaintiff] would harass or retaliate against him or his family if his identity would be disclosed. (citation) Although the court did not find [defendant's] evidence particularly reliable, it <u>found the reasonable inference self-evident that unveiling [defendant's] identity would subject him to harm and chill others from engaging in protected speech</u>." <u>Signature Mgmt. Team, LLC v. Automatic, Inc.</u>, ___F. Supp. 2d ___, 2013 WL 1739480 at *9 (N.D. Cal. 2013) (emphasis added), citing <u>Art of Living</u>.

By contrast, there is no compelling need for the disclosure of Doe 1's identity at this time.  Plaintiff claims she cannot go forward with this lawsuit unless she determines Doe 1's identity.  However, counsel for Doe 1 hereby represents that he will accept service on behalf of Doe 1.  Thus, there is no longer any requirement for disclosure in order to serve Plaintiff's Complaint. In the <u>Art of Living</u> case, as summarized in <u>Signature Mgmt. Team</u>, <u>supra</u>, 2013 WL 1739480 at *9.

> The court found no similar harm to the [plaintiff] should [defendant] remain anonymous, noting that [defendant] had been engaged in the litigation and responsive to discovery requests. <u>Art of Living</u> at *10. The court noted that [defendant's] identity may later need to be revealed to facilitate a deposition or to enforce any judgment obtained against him. <u>Id.</u> Even so, the court quashed the subpoena seeking [defendant's] identity and stayed further discovery on that subject. <u>Id.</u>

Plaintiff will no doubt argue she still needs Doe 1's identity to conduct

discovery or potentially take a deposition of Doe 1 for her $250 copyright infringement claim.  However, based on the Fair Use doctrine, Doe 1 has immediate plans to move forward with a summary judgment motion and request for all attorneys' fees, or alternatively a motion to dismiss and/or for rule 11 sanctions.  This is highly appropriate in a case like this, since there is no dispute about what was posted by Doe 1 on the mungergames.net political internet blog, nor about when it was posted. The blog article at issue is attached as Exhibit "D" to the September 20, 2013 Declaration of Rick A. Cigel Declaration filed in conjunction with Doe 1's opening brief (the "Opening Cigel Decl."), and Plaintiff has not disputed it is a true and correct copy of the article.

      The Ninth Circuit has very recently stated that where, as here, "no material, historical facts are at issue and the parties dispute only the ultimate conclusions to be drawn from those facts . . . [a court can] conclude as matter of law that the challenged use [does or] does not qualify as a fair use of the copyrighted work." <u>Selzer v. Green Day, Inc.</u>, 725 F.3d 1170, 1175 (9th Cir. 2013), *quoting*, <u>Harper & Row Publishers, Inc. v. Nation Enters.</u>, 471 U.S. 539, 564.  <u>See generally</u>, N. Snow, "Judge Playing Jury: Constitutional Conflicts In Deciding Fair Use On Summary Judgment," 44 U.C. Davis L. Rev. 483, 489 (2010) ("Today disputes over fair use are nearly always decided at summary judgment.")

      As a matter of law, then, the court in Northern California (where this action is pending) can look at the uncontroverted evidence, evaluate the four Fair Use factors, and reach a legal conclusion.  Doe 1 is confident that the factors tip overwhelmingly in favor of a finding of Fair Use, and this will end the case as a matter of law prior to the need for any depositions.

III.   <u>THIS COURT SHOULD CONSIDER THE "FAIR USE" DOCTRINE IN DETERMINING WHETHER TO QUASH PLAINTIFF'S SUBPOENA</u>

      The fair use doctrine is at the very heart of this matter, since <u>there can be no copyright infringement if the use is fair</u>.  <u>Selzer</u>, <u>supra</u>, 725 F.3d at 1175 ("17 U.S.C. §

107 establishes that fair use of a copyrighted work is not an infringement of copyright"). Perhaps recognizing the overwhelming strength of Doe 1's Fair Use argument, plaintiff tries to sweep it under the rug.

Plaintiff asserts that numerous courts, including the U.S. Supreme Court, have held that this court cannot consider the Fair Use doctrine in determining this motion to quash. This assertion is simply wrong. In addition to defying logic, the cases Plaintiff cites at page 17 actually stand for the exact opposite proposition.

In Art of Living, supra, the court applied the two-part test set forth in Highfields, supra, 385 F. Supp. 2d at 971 (granting anonymous speaker's motion to quash subpoena to ISP). At the first step, the plaintiff must produce competent evidence supporting a finding of each fact that is essential to a given cause of action. Secondly, the court must compare the magnitude of the harms that would be caused to the competing interests by a ruling in favor of the plaintiff and a ruling in favor of the defendant. Signature Mgmt. Team, supra, 2013 WL 1739480 at *9 (emphasis added), citing, Art of Living, supra at *7. The Art of Living court carefully balanced the competing harms and, on that basis alone, quashed the subpoena seeking the identity of an anonymous blogger. Therefore, the court had no reason to address the first factor, which would have implicated the fair use defense. Far from stating that a court should not consider fair use on a motion to quash, the Art of Living court stated the following:

It is worth noting, however, that because fair use is generally considered an affirmative defense, a defendant's conduct may be constitutionally protected even where a plaintiff establishes a prima facie case of copyright infringement. See, e.g., Elvis Presley Enters. v. Passport Video, 349 F.3d 622, 626 (9th Cir. 2003) (Finding that although the plaintiff had shown ownership and copying, the district court did not abuse its discretion in finding fair use). As the fair use doctrine enshrines an important first amendment protection, a court determining whether to unmask an anonymous

<u>defendant might consider fair use arguments raised in a motion to quash even</u>
<u>where the applicable standard requires only a prima facie showing of the</u>
<u>plaintiff's claim</u>.  *See*, <u>Arista Records LLC v. Doe</u>, 604 F.3d 110 (2d
Cir.2010) (applying the <u>Sony Music</u> factors and rejecting defendants' vague
allegations that their unauthorized downloading of plaintiffs' musical
recordings 'may' be protected by fair use).

<u>Art of Living</u>, <u>supra</u>, 2011 WL 5444622 at *8, n.6 (emphasis added).

This plain language is indisputable.  Citing to both Ninth Circuit and Second Circuit precedent, the <u>Art of Living</u> court clearly stated that a court should consider the Fair Use defense when determining whether a Plaintiff has met its burden of proof on a motion to quash.

IV.    <u>THE "FAIR USE" FACTORS WEIGH IN FAVOR OF QUASHING PLAINTIFF'S SUBPOENA</u>

The doctrine of Fair Use is discussed at length in Doe 1's opening brief. Although Plaintiff does not dispute what the four factors are, she disputes essentially all of Doe 1's conclusions. Perhaps hoping this Court would adopt her ill-reasoned arguments to ignore Fair Use at this juncture, Plaintiff makes quick work of analyzing the four factors and does not address most of the cases cited by Doe 1.

A.    PURPOSE AND CHARACTER OF THE USE

As discussed in Doe 1's opening brief, whether a work is "transformative" is of utmost importance, and "[t]he more transformative the new work, the less important the other factors, including commercialism, become." <u>Campbell v. Acuff-Rose Music, Inc.</u>, 510 U.S. 569, 579 (1994).  In the opening brief, Doe 1 cites numerous cases establishing that the publication of a photograph for purposes of criticizing the subject matter of the photograph is transformative, and thus Fair Use.

Plaintiff argues that the use of her headshot is not "transformative", claiming it does not alter the original photo, and does not add any new expression, meaning or message.  This is simply not the case.  That argument was soundly put to rest in the

1  <u>Sedgwick</u> case, which states:

2  <u>The question of fair use does not turn simply on whether the photographs</u>

3  <u>themselves were unaltered</u>. Rather, as the relevant jurisprudence makes clear,

4  <u>the salient inquiry is whether the use of the photos, *in the specific context*</u>

5  <u>*used,* was transformative</u>. See <u>Perfect 10, Inc.,</u> 508 F.3d at 1164 ("a search

6  engine puts images *'in a different context'* so that they are 'transformed into a

7  new creation.' ") (emphasis added). In that regard, the Ninth Circuit has

8  consistently held that "making an exact copy of a work may be transformative

9  so long as the copy serves a different function than the original work[.]" <u>Id</u>.

10  (image originally used for entertainment or aesthetic purposes was

11  transformed where defendant used the same image to facilitate use of an

12  internet browser to locate information on the web); <u>Kelly v. Arriba Soft Corp.</u>,

13  336 F.3d 811, 816 (9th Cir.2003) ( "exact replication" of protected images

14  was fair use where used in a different context from the original); <u>Mattel</u>, 353

15  F.3d at 802 (photographs of Barbie dolls "in various absurd and often

16  sexualized positions" parodied "Barbie's influence on gender roles and the

17  position of women in society" and hence was transformative); <u>see also</u> <u>Nunez</u>

18  <u>v. Caribbean Intern. News Corp.,</u> 235 F.3d 18, 22 (1st Cir.2000) (holding that

19  use of unaltered pictures in conjunction with editorial commentary gave them

20  "new meaning" sufficient to transform the works into a "newsworthy" use);

21  <u>Leibovitz v. Paramount Pictures Corp.,</u> 137 F.3d 109, 115 n. 3 (2d Cir.1998)

22  (application of the fair use doctrine is particularly apropos where the use of

23  the work disparages the original).

24  <u>Sedgwick Claims Management Services, Inc. v. Delsman</u>,  2009 WL 2157573 (N.D.

25  Cal. 2009) (emphasis added), <u>aff'd,</u> 422 Fed.Appx. 651(9th Cir. 2011).

26      Cases consistently hold that criticizing, debating or commenting on the subject

27  of an unaltered photograph is transformative.  It is difficult to argue with that premise,

28  since the Fair Use statute itself states that reproduction "for purposes such as

criticism, comment, [or] news reporting" is not an infringement of copyright.   17 U.S.C. § 107.   In addition to the numerous cases already cited in Doe 1's opening brief (see pages 17 – 19), further research has revealed the following additional cases.

In <u>Calkins v. Playboy Enterprises Intern., Inc.</u>, 561 F.Supp.2d 1136, 1141 (E.D. Cal. 2008), the court addressed whether republication of a centerfold model's photograph was transformative when used in an article about the model.   The court stated:

> In this regard, the Court finds PEI's use of the Photograph to be transformative because although PEI made a replica of the Photograph, <u>the reproduced image was much smaller and served an entirely different function than the original image</u>. Mother Lode originally created the Photograph for the limited purpose of being used as a gift by Shannon's family and friends [ ] while PEI used the Photograph, in conjunction with other photographs of Shannon and a handwritten biography, for the purpose of personalizing Shannon by providing insight into her life, including how she grew up and what her interests are. [ ] Thus, <u>because PEI used the Photograph in a new context to serve a different function</u> (inform and entertain Playboy readers) than the original function (gifts for family and friends), <u>PEI's use did not supersede the function of the original Photograph, and therefore PEI's use is transformative</u>. *See* <u>Kelly,</u> 336 F.3d at 818-19; <u>see also</u>, <u>Nunez v. Caribbean Int'l News Corp.</u>, 235 F.3d 18, 22-23 (1st Cir.2000) (republication of photographs taken for a modeling portfolio in a newspaper was transformative because the photos served to inform, as well as entertain). (emphasis added)

In the <u>Nunez</u> case, plaintiff photographer had taken photos of "Joyce Giraud (Miss Puerto Rico Universe 1997) for use in Giraud's modeling portfolio. Núñez then distributed the photographs to various members of the Puerto Rico modeling community in accordance with normal practice."   <u>Id.</u>, 235 F.3d at 21.   A local television station reproduced the photographs for purposes of debate and commentary

on whether the photos "were appropriate for a Miss Puerto Rico Universe, based on the fact that Giraud was naked or nearly naked in at least one of the photos." Id.  A magazine then republished the photos in articles about the controversy.

Nunez sued for copyright infringement, and the court found Fair Use and dismissed the complaint with prejudice.  The court stated, "[W]hat is important here is that plaintiffs' photographs were originally intended to appear in modeling portfolios, not in the newspaper; the former use, not the latter, motivated the creation of the work. Thus, by using the photographs in conjunction with editorial commentary, El Vocero did not merely "supersede[ ] the objects of the original creation[s]," but instead used the works for "a further purpose," giving them a new "meaning, or message." Id. at 23, citing, Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 579 (1994).

See also, Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605, 609 (2d Cir.2006) (concluding that the use of Grateful Dead concert posters to comment on and commemorate the performances they were designed to promote was transformative); Wade Williams Distribution, Inc. v. American Broadcasting Co., Inc., 2005 WL 774275 (S.D.N.Y 2005) ("The films were not used for their intended entertainment purposes, but were critiqued, along with other films, as examples of how films portray aliens with human characteristics."); L.A. News Serv. v. Reuters Television Int'l, 149 F.3d 987, 993 (9th Cir. 1998) (a mere rebroadcast of video footage was not in itself transformative because it did not "explain the footage, edit the content of the footage, or include editorial comment.").

In summary, Doe 1 indisputably placed Plaintiff's publicity headshot in a different context and used it for a different purpose than originally intended.  Plaintiff says she commissioned the headshot for publicity; Doe 1 posted the headshot for purposes of criticism and commentary.  Both statutory and case law consistently hold that this is a transformative use, weighing heavily in favor of a Fair Use finding.

B.     NATURE OF THE COPYRIGHTED WORK

Plaintiff argues that her headshot photo is "creative" because the photographer made certain creative choices such as urging her to smile, lighting and location. However, as in the <u>Nunez</u> case, in which pictures were taken for a modeling portfolio, this does not warrant a finding of "creative".  The <u>Nunez</u> court stated:

> The district court suggested, and we agree, that Núñez's pictures could be categorized as either factual or creative: certainly, photography is an art form that requires a significant amount of skill; <u>however, the photographs were not artistic representations designed primarily to express Núñez's ideas, emotions, or feelings, but instead a publicity attempt to highlight Giraud's abilities as a potential model</u>. *Cf*. <u>Haberman v. Hustler Magazine, Inc.</u>, 626 F. Supp. 201, 211 (D. Mass. 1986) (reproduction of surrealistic art in magazine, where creativity counted against fair use finding).

<u>Nunez</u>, <u>supra</u>, 235 F.3d at 23 (emphasis added).

Likewise, in the present case, Plaintiff's headshot was not meant to express her photographer's ideas, emotions or feelings, but instead as publicity for Plaintiff as a political candidate. Complaint at ¶ 11.  There is nothing in Plaintiff's Complaint or any declaration that states Mr. Hussey took Plaintiff's photo for purposes of creating an original artistic work.  Thus, this factor also weighs in favor of finding Fair Use.

C.     AMOUNT AND SUBSTANTIALITY OF PORTION USED

Plaintiff argues that this factor is neutral without citing a single authority.  On the contrary, this factor weighs in favor of a Fair Use finding.  It is simply not possible to publish only a portion of Plaintiff's publicity headshot without destroying the purpose for which it was published.  <u>Kelly v. Arriba Soft Corp.</u>, 336 F. 3d 811, 821 (9th Cir. 2003).

D.     EFFECT OF THE USE UPON THE POTENTIAL MARKET FOR OR VALUE OF THE COPYRIGHTED WORK

Plaintiff argues that Doe 1 has not presented any evidence to prove that its use

of Plaintiff's headshot had no effect on the market.   However, Plaintiff has not identified any market in either her Complaint or in any of the three declarations filed with her Opposition.  There is not a single allegation that she has ever sold her out-of-date campaign publicity headshot to anyone, or that she has ever earned any income from the sale of this old campaign publicity headshot, or even that anyone has ever expressed interest in purchasing her campaign publicity headshot.

    In this context, it is difficult to imagine what "market" Plaintiff claims Doe 1 has the burden of proving is unaffected.   Further, despite Plaintiff's claims that she has "carefully restricted" her authorization to use her headshot, this is belied by a simple internet search.  On the website www.bing.com/images, a search for "Harmeet Dhillon photo" reveals over 1300 hits.  The first page alone reveals approximately 20 photos that appear to be publicity photos, including the headshot at issue in this case. The bing.com website printout is attached as Exhibit "F" to the Declaration of Rick A. Cigel filed in support of this Reply Brief (hereafter the "Cigel Decl.").

    Cases addressing the issue of damages in copyright have held that mere speculation about what someone might be willing to pay is insufficient to withstand summary judgment.  See, e.g. Dash v. Mayweather, ____ F.3d _____, 2013 WL 5365967 at *12 (4th Cir. 2013) (expert's professional valuation of damages was too speculative as a matter of law, without evidence of a fair market value, including evidence of a prior sale, income or licensing fees for the copyrighted work).

    Thus, without any evidence or even an allegation that Plaintiff has suffered any actual damage, this factor also weighs in favor of a finding of Fair Use.

V.    THE NINTH CIRCUIT HAS ADOPTED THE HIGHEST BURDEN OF
      PROOF WHEN POLITICAL SPEECH IS AT STAKE

    Perhaps the most complicated issue this Court needs to address is what standard of proof is required of Plaintiff before this Court can invade Doe 1's First Amendment rights.  Plaintiff argues for a standard of proof from the Arista Records case, apparently because it is the only circuit court case addressing this issue in the

copyright context.  However, the Ninth Circuit has plainly stated that it is the <u>type of speech</u> that should be the determinative factor, and <u>not the cause of action alleged</u>.  <u>Art of Living</u>, <u>supra</u>, 2011 WL 5444622 at *5.

As stated in <u>Anonymous Online Speakers</u>, <u>supra</u>, 661 F.3d at 1177, "the nature of the speech should be a driving force in choosing a standard by which to balance the rights of anonymous speakers in discovery disputes."  The court noted that the speech at issue in <u>Anonymous Online Speakers</u> was purely commercial speech, and thus "should be afforded less protection than political, religious, or literary speech."  <u>Id</u>.  Similarly, the <u>Sony Music</u> court stated that illegal downloading of music "qualifie[d] as speech, but only to a degree" and thus deserved only protection that "is limited, and subject to other considerations."  <u>Sony Music Entertainment, Inc. v. Does 1 – 40</u>, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004).

By contrast, political speech is at the heart of the First Amendment and deserving of the highest protections.  <u>Anonymous Online Speakers</u>, 661 F.3d at 1173 *citing*, <u>Meyer v. Grant</u>, 486 U.S. 414, 422, 425 (1988).  The Court stressed that the First Amendment protection of "core political speech" is "at its zenith".  It is simply inappropriate to equate illegal music downloading with robust political debate.

Thus, all discovered cases involving political speech have applied a standard of proof greater than a mere prima facie showing.  As detailed in Doe 1's opening brief, the standard ranges from being able to survive a motion to dismiss, to being able to survive a motion for summary judgment.  <u>See, e.g.</u>, <u>Highfields</u>, <u>supra</u>, (applying a two-part test requiring "competent evidence" of each essential fact)*;* <u>Chula Vista Citizens for Jobs & Fair Competition v. Norris</u>, 875 F. Supp. 2d 1128, 1140-41 (S.D. Cal. 2012) (the degree of scrutiny varies depending on the circumstances and the type of speech at issue); <u>SI03, Inc. v. Bodybuilding.com, LLC</u>, 441 F. App'x 431, 432 (9th Cir. 2011) (requiring in camera disclosure of speaker's identity to determine if they were political speakers or commercial competitors, in order to apply the correct standard of proof); <u>Dendrite Intern., Inc. v. Doe No. 3</u>*,* 342 N.J.Super. 134, 775 A.2d

756 (N.J. Super. 2001) (preventing disclosure of the identity of an individual alleged to have posted defamatory statements against a public corporation on an internet message board); John Doe No. 1 v. Cahill, 884 A.2d 451 (Del. 2005) (preventing disclosure of the identity of an individual who posted allegedly defamatory statements against a political candidate on the internet).

Doe 1 asserts that this Court should apply the Cahill summary judgment standard to a case involving political speech, such as the present case.  See, Doe v. Cahill, 884 A.2d 451 (Del.2005).  This assertion is based on the Ninth Circuit's recent nod of approval to that standard in the Anonymous Online Speakers case.

Despite Plaintiff's own highly questionable version of case law, Plaintiff accuses counsel for Doe 1 of a "blatant mischaracterization of the law" regarding the Anonymous Online Speakers case.  (Opposition at p. 4, l. 22).  Plaintiff argues that Anonymous Online Speakers "did no more than refrain from overturning the District Court's application of the Cahill standard". (Opposition at p. 15, ll. 18 – 19).

This wrongful accusation is apparently meant to prevent this Court from considering the only Ninth Circuit opinion that has addressed the appropriate standard of proof for political speech in the context of a subpoena to unmask the identity of an anonymous political speaker.  The Anonymous Online Speakers court was confined to a rigid mandamus standard in issuing its opinion.  Nonetheless, the court very specifically indicated that the Cahill court's summary judgment standard was understandable, since highly protected political speech was at issue in Cahill.

It is difficult to argue with a direct quotation from the Anonymous Online Speakers opinion, which states: "Because Cahill involved political speech, that court's imposition of a heightened standard is understandable." Id. at 1177.  This conclusion was echoed in the more recent case of SI03, Inc., supra, 441 F. App'x at 432 (9th Cir. 2011) ("We have recently explained that the rigorous Cahill standard is 'understandable' in a case 'involv[ing] political speech.'") (quoting Anonymous online Speakers).

Doe 1's full analysis of the proper standard to apply is contained in the opening brief at pages 8 through 15.  The analysis is complicated, and Plaintiff is free to disagree with Doe 1's conclusion.  However, to accuse Doe 1 of blatantly mischaracterizing the law is out of line and hypocritical.  The Ninth Circuit said what it said, and Doe 1 made the context clear.

## VI.   THE MEET AND CONFER REQUIREMENTS HAVE BEEN MET

Doe 1 has previously provided this Court with the letters that constitute the meet and confer efforts prior to bringing this motion to quash.  (Original Cigel Decl. at Exhs. "K" and "L".)  There is nothing equivocal about the position of Plaintiff's counsel on not withdrawing her subpoena, yet she now makes the absurd claim that there was never a meet and confer effort.

Exhibit "K" clearly informed Plaintiff's counsel that Doe 1 planned to file a motion to quash the subpoena that Plaintiff had improperly issued from the Northern District of California.  The letter also questioned the propriety of filing an Administrative Motion without notice or proof of service to anyone, and pointed out that the subpoena raised serious First Amendment and related concerns.

Plaintiff's counsel now implies that she responded with an open offer to discuss the subpoena with Doe 1's counsel.  On the contrary, Plaintiff's counsel suggested that she would be willing to discuss a resolution of the entire case with Doe 1's counsel, but indicated that counsel's concerns raised in the letter were "irrelevant to whether NDN must comply with the subpoena.  NDN has been properly served with a Court-approved subpoena and we expect and will insist upon compliance." (Original Cigel Decl, Exhibit "L").

In summary, Plaintiff refused to withdraw the subpoena or even meaningfully respond to the Constitutional issues raised in counsel's letter.  Further solidifying her position on the subpoena, Plaintiff served a new subpoena three days later that was identical to the first one, except that it now stated it was being issued from the Central District of California.

Although Plaintiff claims the new subpoena corrected a "typographical error" (footnote 5 of the Opposition), it actually corrected a serious jurisdictional flaw that was pointed out by the court in the Northern District of California case.  Specifically, when Plaintiff sought to enforce the first subpoena against NDN, the Honorable Susan Illston quoted at length from the jurisdictional requirements of Fed. R. Civ. P. 45 and found that "the subpoena is invalid and cannot be enforced by this Court." Cigel Decl. at Exh. "E".

In summary, Plaintiff clearly insisted on compliance with her subpoena in a letter to counsel.  When her efforts to enforce compliance with her subpoena failed due to fatal jurisdictional flaws, Plaintiff again insisted on compliance by reissuing the same subpoena from a different court.  NDN contacted Plaintiff's counsel by email, asking whether counsel could correctly assume that the new subpoena from the Central District was meant to replace the former subpoena from the Northern District. Counsel simply replied, "Your understanding is correct."  (Cigel Decl., Exh. "G").

VII.   <u>CONCLUSION</u>

For all the foregoing reasons, Doe 1 respectfully requests this Court to quash the July 22, 2013 subpoena.

Dated:  October 25, 2013          **THE CIGEL LAW GROUP, P.C.**


By:   _____/s/_____
          Rick A. Cigel
          Attorneys for Defendant
          DOE 1

DEFENDANT DOE 1's REPLY BRIEF IN SUPPORT OF MOTION TO QUASH SUBPOENA

1

PROOF OF SERVICE

2

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

3

CASE NAME: **HARMEET K. DHILLON v. DOE 1**

4

5

6

      The undersigned declares: I am a resident of the United States and am employed in the City and County of Los Angeles, State of California; I am over the age of eighteen years and not a party to the within action; my business address is 10866 Wilshire Boulevard, Suite 400, Los Angeles, California 90024.

7

On October 22, 2013, I served the following documents:

8

9

10

**1. REPLY BRIEF IN SUPPORT OF MOTION BY DEFENDANT DOE 1 TO QUASH SUBPOENA ISSUED IN CENTRAL DISTRICT OF CALIFORNIA TO NEW DREAM NETWORK, LLC**

11

12

**2. DECLARATION OF RICK A. CIGEL IN SUPPORT OF MOTION BY DEFENDANT DOE 1 TO QUASH SUBPOENA ISSUED IN CENTRAL DISTRICT OF CALIFORNIA TO NEW DREAM NETWORK, LLC**

By serving in the manner described below to the interested parties herein and addressed to:

13

14

15

16

Harold P. Smith
Krista L. Shoquist
Dhillon & Smith, LLP
177 Post Street, Suite 700
San Francisco, CA 94108

Joel Voelzke
Intellectual Property Law Office of Joel Voelzke
24772 W. Saddle Peak Road
Malibu, CA 90265-3042

17

*Attorneys for Dhillon*                    *Attorney for New Dream Network*

18

19

20

[X] **MAIL:** I caused such envelope(s) to be deposited in the mail at my business address, with postage thereon fully prepaid, addressed to the addressee(s) designated. I am readily familiar with the business practice of collecting and processing correspondence to be deposited with the United States Postal Service on that same day in the ordinary course of business.

21

[X] **(FEDERAL):** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

22

Executed on October 22, 2013 at Los Angeles, California.

23

24

25

Wanda Taylor

26

27

28